IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARY L. LABARRE,

    Plaintiff,

v.                                            No. 04-2401 B

MEMPHIS LIGHT, GAS &
WATER DIVISION,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff, Mary L. Labarre, brought this action against the Defendant Memphis, Light, Gas & Water ("MLG&W"), alleging discrimination on the basis of sex and race, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. Before the Court is the motion of the Defendant for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court GRANTS the Defendant's motion.

FACTS

The following facts are undisputed unless noted.[1] MLGW is a government entity that

---

[1] Local Rule 7.2(d)(3) provides that

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied . . . shall respond to the proponent's number designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

LR 7.2(d)(3), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. Because Labarre did not respond in opposition to the facts submitted by the Defendant as provided by Local Rule 7.2(d)(3), the Court must

provides utility services to the citizens of Memphis, Tennessee and Shelby County, Tennessee. (Amend. Compl. ("Compl.") ¶ 7.) Labarre, an African-American female, was hired by MLGW as a clerk in the Payroll Department on or about October 26, 1976. (Compl. ¶ 9.) Approximately two years later, she was promoted to the position of Payroll Clerk. (Compl. ¶ 10.) Subsequently, in 1981, she was again promoted to the position of Supervisor of the Payroll Department, the position she remained in until October 15, 2002. (Compl. ¶ 11.)

In her position, in November 1998 and continuing thereafter, Plaintiff was responsible for filing magnetic media tapes and other required documentation regarding the W-2 forms issued by MLGW with designated government agencies. (Aff. John McCullough ("McCullough Aff.") ¶ 4.) In November 1998, John McCullough, Chief Financial Officer, Vice-President and Secretary/Treasurer of MLGW, approved the distribution of W-2 forms for the year 1998 to MLGW employees. (McCullough Aff. ¶ 2,4, 5.) However, the the W-2 forms were not filed with the requisite government agencies. (Dep. Mary L. Labarre (July 29, 2005) ("Labarre Dep. I") Ex. 24.) On January 7, 2002, the Internal Revenue Service ("IRS") directed a letter to MLGW providing notice of a penalty charge of $4,185, 749.84 for failure to file W-2 forms for the tax period ending December 31, 1998.[2] (Labarre Dep. I Ex. 24.) The letter was directed to the "Payroll Department" and Labarre acknowledges seeing the letter in January or February of that year. (Labarre Dep. I at 192.)

During the second half of 2002, MLGW's Internal Audit and Personnel departments conducted an investigation regarding the 1998 W-2 problem. (McCullough Aff. ¶ 8.) As part of that

---

assume that those facts are undisputed.

[2] MLGW was ultimately assessed a $4,100.00 penalty for noncompliance regarding the 1998 W-2 filing. (McCullough Aff. Ex. 2.)

investigation, Labarre was asked to provide all correspondence from the IRS to MLGW after January 1, 1998. (Dep. Mary L. Labarre (Oct. 28, 2005) ("Labarre Dep. III") Ex. 96.) It was at this time that senior management of MLGW first learned of the IRS penalty. (Carbage Aff. ¶ 25.) At the conclusion of their investigation, Tom C. Dunagan, Manager of Personnel, and Marcia Mason, Assistant Manager of Personnel, determined that Labarre, in abrogation of her responsibilities, failed to ensure compliance by MLGW with IRS reporting requirements and concealed information regarding the resulting penalty charge. (Aff. Marcia D. Mason ("Mason Aff.") ¶ 7.) Based on this conclusion, Dunagan and Mason recommended to McCullough that she be suspended and demoted. (Mason Aff. ¶ 7.)

On September 30, 2002, Labarre was placed on indefinite suspension pending the final outcome of the investigation. Subsequently, on October 1, 2002, McCullough converted the indefinite suspension to a ten-day suspension beginning October 1, 2002 followed by a permanent reassignment to a non-supervisory position effective upon her return. (McCullough Aff. ¶ 11.) On November 6, 2002, McCullough informed Labarre that, because of her failure "to ensure that MLGW is in compliance with all reporting requirements" and failure to notify management of the situation, she was reassigned to the position of Process Analyst, the position she maintained until her retirement. (McCullough Aff. Ex. 2; Compl. ¶ 35.) The reassignment involved the removal of supervisory authority and a reduction in pay of approximately $4,302.72 annually. (McCullough Aff. Ex. 2.)

On January 27, 2003, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint with the in-house EEO office at MLGW. Thereafter, on February 6, 2003, Plaintiff received a performance evaluation by Ira Carbarge, her supervisor for the period of January 1, 2002 through

June 30, 2002, rating her performance for that period at P-4, indicating that "performance requirements and expectations are not being met." (Aff. Ira Carbarge ("Carbage Aff.") ¶ 32.) P-4 is the lowest rating on the evaluation scale. (Compl. ¶ 15.) In his evaluation, Carbage cited Labarre's involvement in the 1998 W-2 incident as well as her failure to notify management of the issue. (Carbage Aff. ¶ 32; Ex. 15.)

In August 2003, the internal EEO office concluded its investigation and Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint with the Tennessee Human Rights Commission ("THRC"). In her complaint, filed August 25, 2003, Plaintiff cited discrimination on the basis of race arising from her suspension, demotion, and discipline related to the 1998 W-2 filing incident. (Dep. Mary L. Labarre (Sept. 20, 2005) ("Labarre Dep. II") Ex. 44.) In her complaint, Labarre also noted that a white co-worker, who had failed to perform the same or similar duty, was not subject to the same treatment. (Labarre Dep. II Ex. 44.) The EEOC issued a Dismissal and Notice of Rights on February 24, 2004 informing Labarre of her right to file a lawsuit against MLGW within ninety days of receipt of the notice. (Compl. Ex. A.) Plaintiff subsequently commenced this action on May 27, 2004 alleging discrimination on the basis of race and sex, harassment, and retaliation. (Compl. ¶ 40.)

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for

4

summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

I. Subject Matter Jurisdiction

MLGW first contends that this Court lacks subject matter jurisdiction over Plaintiff's claims for discrimination based on sex[3], retaliation, and harassment because they were not articulated in

---

[3] As a preliminary matter, the Court notes that, in response to the instant motion, Plaintiff makes no mention of a discrimination claim based on gender. Accordingly, the Court presumes that Plaintiff has abandoned the claim and will not address it herein.

her August 27, 2003 EEOC complaint. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." Strouss v. Michigan Dept. of Corrections, 250 F.3d 336, 342 (6th Cir. 2001). In determining whether an unnamed charge could reasonably be expected to grow from a named charge, the Sixth Circuit applies the "expected scope of investigation test." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (citing Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 380 (6th Cir. 2002)). Under this test, the determinative inquiry is whether the Plaintiff alleged sufficient facts in her EEOC complaint to put the EEOC on notice of her unnamed claims, despite her failure to check the appropriate box on the EEOC's Complaint of Discrimination form. Dixon, 392 F.3d at 217.

Labarre's EEOC charge references only her demotion in the period from September 30, 2002 through November 6, 2002. (Labarre Dep. II Ex. 44.) The complaint also makes reference to her earlier suspension which was part of the same discipline as the demotion. (Labarre Dep. II Ex. 44.) Plaintiff states in the complaint that, based on the suspension and demotion, she believed she had been "discriminated based on [her] race." (Labarre Dep. II Ex. 44.) Labarre checked the box on the form indicating that she suffered discrimination based on race, but did not select sex, retaliation, or any other forms of discrimination. (Labarre Dep. II Ex. 44.)

In response to the instant motion, Plaintiff has not provided the Court with any reason from which to conclude that her additional claims of retaliation and harassment could reasonably be expected to grow out of her EEOC charge for race discrimination. "Generally, retaliation claims based on conduct that occurs *after* the filing of the EEOC charge can reasonably be expected to grow out of the charge." Strouss, 250 F.3d at 342 (citing Duggins v. Steak 'N Shake, Inc., 195 F.3d 828,

832-33 (6th Cir. 1999) (emphasis added). However, where as here, the retaliation claims stem from conduct occurring *before* the filing, the retaliation claims must be included in the EEOC charge. Id. (citing Ang v. Proctor & Gamble Co., 932 F.2d 540, 547 (6th Cir. 1991)) ("Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.").

Labarre asserts two retaliation claims in the instant action. First, she alleges that her demotion was in retaliation for "not taking action when she was given vague instructions about giving up some of her duties." (Pl.'s Resp. Opp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 4.) While her demotion was recounted in the facts of her EEOC charge, the activity cited by Plaintiff, namely her failure to follow vague instructions from her employer, is not activity protected by Title VII, and thus, cannot form the basis of a valid retaliation claim. See E.E.O.C. v. Ohio Edison Co., 7 F.3d 541, 543 (6th Cir. 1993) (noting that to establish a valid retaliation claim, an employee must show that an employer discriminated against an employee because she "opposed an unlawful employment practice, or made a charge, or participated in an investigation, proceeding, or hearing related to Title VII."). Second, Plaintiff asserts that the low rating she received on her February 2003 performance evaluation was in retaliation for her filing an internal complaint with MLGW on January 27, 2003. While filing an internal complaint of discrimination is protected activity, Labarre was aware of the action and the alleged retaliatory performance evaluation at the time of her filing this complaint in August 2003. See Reed v. Cracker Barrel Old Country Store, Inc., 133 F.Supp.2d 1055, 1070 (M.D. Tenn. 2000) ("internal complaints are a form of protected activity."). Therefore, she could have included facts relating to that claim in her EEOC charge. Because she did not, and because a claim

of retaliation premised on the February 2003 performance evaluation could not reasonably be expected to have grown from her charge of race discrimination based on her suspension and demotion, the Court lacks subject matter jurisdiction to hear the claim.  Accordingly, Plaintiff's retaliation claims are hereby DISMISSED.

While it is not clearly articulated, it appears that Plaintiff bases her harassment claim solely on Carbage's derogatory statements in a departmental meeting in July 2002.  Specifically, Plaintiff alleges that Carbage called her a "crazy, stupid, old ugly woman." (Aff. Deborah A. Spight ("Spight Aff.") ¶ 5; Pl.'s Resp. at 3.)  Because Labarre's EEOC complaint citing race discrimination arising from her suspension and demotion would not have put the EEOC on notice of this isolated incidence of harassment, which took place approximately four months before the discipline complained of and which contained language unrelated to her race, it is not within the scope of the EEOC charge. Dixon, 392 F.3d at 217. Accordingly, Labarre's harassment claim is DISMISSED.

II. Timeliness

Where, as here, a Title VII plaintiff first initiates proceedings with a state or local agency, such as the THRC, that has authority to grant relief regarding the employment practice, any discriminatory acts by the Defendant that occurred within 300 days before the date of filing are actionable.  42 U.S.C. § 2000e-5(e)(1); see also Tartt v. City of Clarksdale, No. 04-5925, 2005 WL 2210224, at *3 (6th Cir. Sept. 13, 2005) ("Tennessee is a deferral state for purposes of the federal discrimination statutes") (internal quotations omitted).  Plaintiff filed her charge with the THRC on August 27, 2003.  Thus, only those acts occurring within the preceding 300 days, or after November 1, 2002, are actionable.

Labarre maintains, however, that acts outside the 300 day time limit should also be

8

considered because they are part of a continuing hostile work environment in violation of her Title VII rights. (Pl.'s Resp. at 4-6.) A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . ." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal quotations and citations omitted). In National Railroad Passenger Corporation v. Morgan, the United States Supreme Court recognized the difference between claims based on discrete discriminatory acts and those representing a hostile work environment. National Railroad Passenger Corporation, 536 U.S. 101, 122 S.Ct. 2061 (2002). "Hostile work environment claims are different in kind from discrete acts" because the "very nature" of a hostile work environment "involves repeated conduct." Id. at 115, 122 S.Ct. at 2073. In contrast to discrete acts, the unlawful employment practice comprising a hostile work environment claim "occurs over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own." Id.. Accordingly, the Supreme Court concluded that so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117, 122 S.Ct. at 2074.

In support of the existence of a hostile work environment claim during the 300 days preceding the filing of her complaint, Plaintiff cites the notice of her demotion on November 6, 2002 and a low performance evaluation on February 4, 2003. (Pl.'s Resp. at 4.) However, neither of these actions, taken singularly or together, evidence the discriminatory intimidation, ridicule or insult actionable under a hostile work environment claim. Harris, 510 U.S. at 21, 114 S.Ct. at 370. Rather, the allegations are better characterized as discrete employment actions which are more suited

for analysis under a claim for disparate treatment, and will be considered as such below.  See Felton v. Polles, 315 F.3d 470, 485 (5th Cir. 2002) (citing Harris, 510 U.S. at 21, 114 S.Ct. at 370) (noting that "[a]ctionable harassment must involve racially discriminatory intimidation, ridicule and insults" and finding that employment decisions are more appropriately considered as part of a disparate treatment claim) (internal quotations omitted).  Because Plaintiff has failed to demonstrate any act evidencing a hostile work environment during the 300 days preceding the filing of her EEOC complaint, she may not revive time barred actions on such a claim.

### III. Merits of Plaintiff's Title VII Discrimination Claim

Labarre's discrimination claim is premised on her demotion, which MLGW contends was discipline for her failure to perform her job functions and to report the notice of the IRS penalty to senior management. In her EEOC complaint and in response to the instant motion, Plaintiff assserts, albeit generally, that a similarly situated Caucasian employee was not treated in the same manner, and thus, the Court considers her claim as one for disparate treatment.  (Pl.'s Resp. at 4.) Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's race [or] sex . . ."  42 U.S.C. § 2000e-2(a)(1).  Disparate treatment as posited in this instance by the Plaintiff "occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like."  Huguley v. Gen. Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). Labarre may withstand the motion for summary judgment either by presenting direct evidence of discrimination or by presenting circumstantial evidence, utilizing the evidentiary framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d

10

207 (1981), from which a jury could draw an inference of discriminatory motive.  See Seay v. Tenn. Valley Auth., 339 F.3d 454, 463 (6th Cir. 2003).

> With respect to direct evidence, the Sixth Circuit has explained as follows:
>
> Where a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination.  This court has explained that direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.  Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.

Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003), reh'g and suggestion for reh'g en banc denied (Apr. 22, 2003) (internal citations and quotation marks omitted).  Thus, upon a showing by a plaintiff of credible direct evidence of discriminatory animus, the employer must "do more than merely 'articulate' its nondiscriminatory reason for its action."  Brack v. Shoney's, Inc., 249 F.Supp.2d 938, 947 (W.D. Tenn. 2003), reconsideration denied, No. 01-CV-2997-DV, 2003 WL 23924996 (W.D. Tenn. Mar. 27, 2003).

Where direct evidence is not available, as is the case here, a plaintiff may, utilizing the McDonnell Douglas/Burdine analysis, create an inference of discrimination based on introduction of evidence supporting a prima facie case of discrimination based on race, that is:  "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; . . . (3) [she] was qualified for the position from which [she] was [demoted]" and (4) that [she] "was either replaced by someone outside the protected class or treated differently than similarly situated, non protected employees."  Noble v. Brinker Int'l, Inc., 391 F.3d 715, 728 (6th Cir. 2004), cert. denied, ___ U.S. ___, 126 S.Ct. 353, 163 L.Ed.2d 62 (2005).  Once the plaintiff has established a prima facie case of

11

discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. If the employer carries its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted. A plaintiff must then prove, by a preponderance of the evidence, that the employer's stated reasons for the employment action were a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518-19, 113 S.Ct. 2742, 2753-54, 125 L.Ed.2d 407 (1993).

It is undisputed that Labarre is a member of a protected class and that she suffered an adverse employment action in the form of a demotion with a resulting decrease in pay. The Defendant argues, however, that she has failed to establish a prima facie case as to the final prong and further, that it has proffered a legitimate, non-discriminatory reason for the action. It is undisputed that Plaintiff was replaced by Issac Fisher, an African American employee, thus Plaintiff cannot establish the final factor by proof that she was replaced by someone outside of her class. (Carbage Aff. ¶ 21.) Plaintiff does, however, allege generally, that she was "treated differently than a Caucasian female that did something similar." (Pl.'s Resp. at 4.) Similarly, in her EEOC complaint, Plaintiff stated in support of her discrimination claim that "a white co-worker failed to perform the same or similar duty, but was not suspended, demoted or disciplined." (Labarre Dep. II at 163.) In support of this statement, Plaintiff offers the following deposition testimony:

> Q: And [the EEOC complaint] says in the second paragraph, a white-co-worker failed to perform the same or similar duty but was not suspended, demoted, or disciplined.
>
> A: That was in reference to Carol Shrein.
>
> Q: Okay. I just wanted to make sure we were talking about the same person. By [sic] you don't know exactly what it is that Ms. Shrein did or did not do, do you?
>
> A: The connection was based on the amount of penalty that John McCullough was

>stating and comparing that to the amount of loss that the company was – had endured under Ms. Carol.
>
>Q: But as far as you know Ms. Shrein did not file any documents or forms with [the] IRS, did she?
>
>A: It didn't have anything to do with IRS filing, no.

(Labarre Dep. II at 163.)[4]

"In cases asserting discriminatory disciplinary action, it is necessary to show that the asserted similarly situated non-minority employees "engaged in misconduct of 'comparable seriousness.'" Harrison v. Metropolitan Gov't of Nashville, 80 F.3d 1107, 1115 (6th Cir.), *overruled on other grounds by* Jackson v. Quanex Corp., 191 F.3d 647, 667 (6th Cir.1999) (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976)). Further, as explained by the Sixth Circuit in Harrison,

>[t]he plaintiff must also demonstrate that the non-minority employees to be compared with [herself] were similarly-situated in all respects. Accordingly, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Id. (internal quotations and citations omitted). From the limited information provided by the Plaintiff, there is no basis from which this Court can conclude that Shrein was similarly situated to her or engaged in any misconduct, much less conduct as serious as hers. Accordingly, the Court finds that Labarre has failed to establish that she was treated differently than similarly situated, non-protected employees in her demotion and thus, her claim of discrimination on the basis of race fails

---

[4] Plaintiff additionally offers the EEOC complaint of Deborah Spight, a female MLGW employee, noting that Spight was treated differently than similarly situated male employees at MLGW. (Pl.'s Resp. Ex. 4.) Because Spight's experience with sexual discrimination at MLGW does not relate to Plaintiff's assertion that similarly situated *Caucasian* women were treated differently than *her* regarding her demotion, it will not be considered here.

as a matter of law.  <u>Noble</u>, 391 F.3d 715, 728.

## CONCLUSION

For the reasons stated herein, the motion of the Defendant for summary judgment is GRANTED.

IT IS SO ORDERED this 24th day of March, 2006.

                                                s/  J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE